IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KEVIN S.**, | Case No. 6:17-cv-569-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**, | |
| Defendant. | |

Drew L. Johnson and Kathryn Tassinari, DREW L. JOHNSON, P.C., 1700 Valley River Drive, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Ryan Lu, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Kevin S. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed

below, the Court reverses the Commissioner's decision and remands for an immediate award of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on September 4, 2013, alleging disability as of April 4, 2012. On April 4, 2012, at the age of 51, Plaintiff experienced a left frontoparietal stroke, also known as a cerebrovascular accident. Plaintiff alleges that he is disabled by the residuals of that stroke, which include cognitive and speech changes and major vascular neurocognitive disorder. Prior to his stroke, Plaintiff was the store manager at Jamba World Crafts where he had full responsibility for the day-to-day operations of his store. Approximately six months after his stroke, Plaintiff returned to his position on a part-time basis but was soon fired. Plaintiff has not worked since.

The Commissioner denied Plaintiff's claim initially and again on reconsideration. Plaintiff requested a hearing, which was held before ALJ Glenn Meyers on November 15, 2013. On June 13, 2014, ALJ Meyers issued a decision denying the claim. Plaintiff requested review of the hearing decision, which the Appeals Council granted, remanding the case back to the ALJ for further proceedings. On May 27, 2016, a hearing on remand was held before ALJ John Michaelsen. On July 6, 2016, ALJ Michaelsen (hereinafter, "the ALJ") issued a decision again denying the claim. Plaintiff requested review of the decision, which the Appeals council denied on March 6, 2017. Plaintiff now seeks judicial review.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

    §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

  5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

  The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 4, 2012. At step two, the ALJ found that Plaintiff had the following severe impairments: "status-post cerebrovascular accident, with cognitive and speech changes and major vascular neurocognitive disorder." AR 22. At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1, including listing 11.04 (central nervous system vascular accident) and listing 12.02 (organic mental disorder). The ALJ next assessed Plaintiff's RFC and found that Plaintiff could perform medium work as defined in 20 C.F.R. 404.1567(c), with certain physical and environmental limitations, and limited to only "simple, repetitive, and routine tasks requiring no more than occasional contact with co-workers and supervisors, and no contact with the general public."

In formulating the RFC, the ALJ found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record. The ALJ also gave "little weight" to the assessments of Dr. Emil Slatick and Dr. Gregory Cole, the two examining psychologists who administered neuropsychological examinations, including the Wechsler Adult Intelligence Scale-IV ("WAIS-IV") and Wechsler Memory Scale-IV ("WMS-IV"). The ALJ also gave little weight to the medical opinion of Plaintiff's treating physician, Dr. John Lehrer. The ALJ gave "some weight" to the lay opinions of Plaintiff's former employer based on her observations of Plaintiff's performance after returning to work and "limited weight" to the lay opinions of Plaintiff's wife and daughter to the extent that they suggested Plaintiff is unable to work. The ALJ gave "great weight" to the opinion of Dr. Derek Leinenbach, a consultative examiner who performed a physical examination and opined as to Plaintiff's physical limitations.

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work. At step five, the ALJ found that Plaintiff could perform other work as a hardware assembler, hand packager, and laborer, thus concluding that Plaintiff was not disabled during the period at issue.

# DISCUSSION

Plaintiff challenges the ALJ's findings on six bases: (1) the ALJ erred in rejecting Plaintiff's testimony; (2) the ALJ erred in his consideration of the opinions of examining psychologists Dr. Gregory Cole and Dr. Emil Slatick; (3) the ALJ erred in his consideration of treating physician Dr. John Lehrer; (4) the ALJ erred in his consideration of the lay evidence of Plaintiff's former employer, spouse, and daughter; (5) the ALJ erred in finding that Plaintiff's condition does not meet the criteria of Listing 12.02; and (6) the Commissioner failed to meet her burden of proving that Plaintiff retains the ability to perform "other work" in the national economy. For reasons explained below, the ALJ erred in rejecting the opinion of Dr. Slatick. Because Dr. Slatick's report is independently sufficient to support a finding of disability if credited as true, the Court declines to address Plaintiff's remaining arguments.

## A. Dr. Slatick's Report

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion

PAGE 7 – OPINION AND ORDER

of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

In May 2016, Dr. Emil Slatick performed a neuropsychological evaluation on Plaintiff. In a medical source statement, Dr. Slatick opined that Plaintiff would have marked to extreme limitations with his activities of daily living, with social functioning, and with maintaining concentration, persistence, and pace. Dr. Slatick further opined that Plaintiff's "current functioning is profoundly impacted by his cognitive deficits and it is quite likely that there will be long term affects, particularly given the apparent lack of noticeable improvement over the past 3 and ½ years." AR 754. At Plaintiff's hearing on May 27, 2016, the ALJ stipulated that Dr. Slatick's opinion, if accurate, supported a finding of disability and showed that Plaintiff could not perform any occupation. AR 74-75.

The ALJ gave little weight to Dr. Slatick's report after concluding that the report was contradicted by the opinion of Dr. Cole, and was not consistent with the record as a whole. The inconsistencies and contradictions that the ALJ relied upon in arriving at this conclusion related entirely to one line in the conclusion of Dr. Slatick's opinion, in which Dr. Slatick noted Plaintiff's "apparent lack of noticeable improvement." The ALJ conceded that Dr. Slatick's test results suggested worsening from Plaintiff's earlier results on the same test, but said "there is no other evidence in the record to establish this." Because Dr. Cole had recorded certain improvements in Plaintiff's intellectual functioning between January 2014 and March 2016, the ALJ concluded that Dr. Cole's opinion contradicted that of Dr. Slatick. He further concluded that other medical reports from 2014 and 2015 showing Plaintiff to be "alert and oriented" did not support Dr. Slatick's opinion that Plaintiff lacked noticeable improvement.

**1. Whether Dr. Slatick's Opinion is Contradicted by Dr. Cole**

The ALJ's conclusion that Dr. Slatick's opinion was contested by Dr. Cole is not supported by substantial evidence. Dr. Cole found Plaintiff to have a Full Scale IQ score of 86 on the WAIS-IV in January 2014. In March 2016, Dr. Cole administered the WAIS-IV again and Plaintiff had a Full Scale IQ score of 91—a five point increase. Dr. Cole opined that the March 2016 evaluation was "generally consistent" with the January 2014 evaluation, but made the exception that Plaintiff's "overall intellectual functioning appears to have improved since the last testing conducted by this evaluator in 2014." Based on this observation in Dr. Cole's opinion, the ALJ concluded that Dr. Cole's opinion contradicted Dr. Slatick's conclusion regarding Plaintiff's "lack of noticeable improvement."

In May 2016, however, Plaintiff's Full Scale IQ score on the WAIS-IV fell to 80—a score that, though lower than Plaintiff's earlier scores, was within the normal range. In his report on Plaintiff's performance on the May 2016 WAIS-IV, Dr. Slatick noted Plaintiff's 2014 score

PAGE 9 – OPINION AND ORDER

of 86 on the same test, but it is not clear from the record whether Dr. Slatick was familiar with Plaintiff's score of 91 from March 2016. Although two data points— the January 2014 and March 2016 WAIS-IV results—may have supported Dr. Cole's opinion that Plaintiff had demonstrated some improvement in intellectual functioning, a third, later data point—the May 2016 test results—supports the opinion that Plaintiff had a "lack of noticeable improvement." Dr. Cole and Dr. Slatick were working with different sets of testing data over different periods of time, and their conclusions regarding Plaintiff's improvement in intellectual functioning thus cannot reasonably be considered to contradict one another. Had Dr. Slatick concluded that Plaintiff had demonstrated "noticeable improvement" in the areas that Dr. Slatick tested, such an opinion would have been directly contradicted by his objective clinical observations. Further, "[c]ycles of improvement and debilitating symptoms are a common occurrence," *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014), and it is error for an ALJ to focus on one cycle of improvement to reject an opinion that is otherwise uncontested.

Moreover, Dr. Cole and Dr. Slatick's other conclusions and test results are remarkably similar. Even Dr. Cole noted that his 2016 evaluation was generally consistent with his 2014 evaluation, with the exception of some improvement in Plaintiff's intellectual testing. Importantly, Plaintiff's performance on the WMS-IV which, like the WAIS-IV, was administered in January 2014 and March 2016 by Dr. Cole, and in May 2016 by Dr. Slatick, consistently demonstrated significant memory deficiency. Plaintiff scored in the 0.5 percentile for delayed memory in each test, and after scoring in the fourth percentile for auditory memory in January 2014, fell to the first percentile for auditory memory in both 2016 tests. In January 2014, Dr. Cole described Plaintiff's memory capabilities as "severely deficient" and in March 2016 described them as "moderately to severely deficient." Dr. Slatick described Plaintiff's

memory capabilities as ranging from "extremely low" to "borderline." Indeed, Dr. Slatick's opinion regarding Plaintiff's long-term prospects was largely informed by Plaintiff's performance on the WMS-IV, not the WAIS-IV, which demonstrated average to low average intellectual abilities. Dr. Slatick wrote that Plaintiff "performed significantly lower than would be predicted by his intellectual ability in the areas of both auditory and visual memory. These results are indicative of a decline from a previous level of cognitive functioning and suggest the impact of pronounced and prolonged neurological impairment." AR 753. Dr. Slatick's emphasis on Plaintiff's impaired memory is supported not only by Dr. Cole's clinical observations, but also by Plaintiff's account of his own symptoms and the lay testimony of Plaintiff's former employer, daughter, and spouse. Each lay witness identifies Plaintiff's memory as his primary impairment, noting that his forgetfulness prevents him from following simple instructions or safely spending time alone.

**2. Whether Dr. Slatick's Opinion is Consistent with Record as a Whole**

As a preliminary matter, the ALJ's conclusion that there is "no other evidence in the record to establish" Dr. Slatick's observation that Plaintiff lacked noticeable improvement applies the incorrect standard on which to reject the opinion of an examining physician. The ALJ must provide "clear and convincing" evidence to reject an uncontradicted opinion of an examining physician or "specific and legitimate" reasons to reject an opinion of an examining physician that is contradicted by a different medical opinion. Because, as explained above, Dr. Slatick's opinion is not contradicted by Dr. Cole, the ALJ must provide clear and convincing evidence to reject Dr. Slatick's opinion.

Next, the ALJ mischaracterized the record and Dr. Slatick's opinion. The ALJ concluded that medical records from Dr. Lehrer and Dr. Leinenbach from 2015 and 2016, respectively, "belie[d] Dr. Slatick's opinion that the claimant had not improved since April 2012." AR 27.

PAGE 11 – OPINION AND ORDER

Dr. Slatick, however, did not express an opinion that Plaintiff had not improved since April 2012, when Plaintiff's stroke occurred. Rather, Dr. Slatick concluded that Plaintiff was likely to experience long-term effects from his stroke, "particularly given the apparent lack of noticeable improvement over the past 3 and ½ years." AR 754. Dr. Slatick evaluated Plaintiff on May 4, 2016. Dr. Slatick's use of the phrase "3 and ½ years" earlier, therefore, refers to approximately the late fall of 2012, not April 2012, when Plaintiff's stroke occurred. Dr. Slatick's opinion is therefore not inconsistent with the record, insofar as the record shows that Plaintiff made significant improvement in the first six months after his stroke. The reasonable interpretation of Dr. Slatick's comment is that Plaintiff's improvement generally plateaued approximately six months after his stroke, not that Plaintiff had made no improvement since the stroke occurred.

Dr. Lehrer's treatment record from 2015 and Dr. Leinenbach's physical examination from 2016 are not inconsistent with Dr. Slatick's comment regarding Plaintiff's lack of noticeable improvement since fall of 2012 and thus do not provide clear and convincing evidence on which to reject Dr. Slatick's opinion. Dr. Lehrer's December 2015 treatment report described Plaintiff as alert and oriented, with intact comprehension, the ability to follow all verbal commands, and no expressive or receptive aphasia. AR 738. Dr. Leinenbach's March 2016 physical evaluation provided a similar description of Plaintiff and noted that he scored a 26 out of 30 on a mini mental status examination. Dr. Leinenbach also observed Plaintiff as exhibiting moderate expressive aphasia, frustration in communicating, and mild anxiousness. These reports largely address behaviors and symptoms that Dr. Slatick's opinion did not address—indeed, Dr. Lehrer noted that he "did not have neuropsych results available." Dr. Lehrer and Dr. Leinenbach's observations were made in the course of treatment and physical evaluations, not neurological evaluations as Dr. Slatick's observations were. Dr. Slatick did not describe

Plaintiff as unalert or disoriented or incapable of comprehending or responding to Dr. Slatick's commands. Dr. Slatick also administered two much more detailed intelligence and memory assessments than the 30 question mini mental status examination that Dr. Leinenbach administered. Moreover, that the December 2015 report described Plaintiff as not exhibiting expressive aphasia, but the March 2016 report did describe Plaintiff as demonstrating expressive aphasia is generally consistent with Dr. Slatick's conclusion that there was a "lack of noticeable improvement"—or perhaps even a worsening—of Plaintiff's symptoms. Because the ALJ erroneously concluded that Dr. Slatick's opinion was contradicted by Dr. Cole and did not otherwise provide clear and convincing evidence to reject Dr. Slatick's report, the decision to give Dr. Slatick's opinion little weight was in error.

**B. Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

As explained above, the ALJ made a legal error by failing to provide legally sufficient reasons for rejecting Dr. Slatick's opinion. During Plaintiff's hearing on May 27, 2016, the ALJ said on the record that he was "willing to stipulate that if Dr. Slatick's assessment of claimant is

PAGE 14 – OPINION AND ORDER

accurate, there would not be any occupations claimant would be capable of performing . . . [and] that that report supports disability in this case." AR 74-75. Because the ALJ has stipulated that he would necessarily have to conclude that Plaintiff is disabled if Dr. Slatick's testimony is credited as true, there is no need to remand to the agency for further investigation or explanation. Accordingly, the court reverses the Commissioner's decision and remands for an immediate award of benefits.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled is REVERSED and REMANDED for an immediate award of benefits.

**IT IS SO ORDERED**.

DATED this 19th day of June, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
